## GULF STATES UTILITIES CO. v. WUEN-SCHER.

### No. 9965.

Court of Civil Appeals of Texas. Galveston.
May 16, 1934.

Rehearing Denied June 7, 1934.

Bowers & Bowers, of Caldwell (Orgain, Carroll & Bell and Y. D. Carroll, all of Beaumont, of counsel), for appellant.

W. M. Hilliard, of Caldwell, and Winbourn Pearce, of Temple, for appellee.

LANE, Justice.

R. F. Wuenscher brought this suit against Gulf States Utilities Company to recover damages for personal injuries suffered by him by reason of receiving an electric shock and burn, which caused him to fall from a telephone pole to the ground.

He alleged that the defendant maintained and operated its business in and around the town of Lyons, by what is known as primary or high-voltage wires, and secondary wires, or low-voltage wires; that on the 17th day of July, 1930, he was engaged in some work in connection with some telephone wires, and that while so undertaking such work and while he was working in the exercise of ordinary care handling and working around the telephone wires in the usual way, on account of a contact made by the defendant's light and power wires with the wire or wires of the telephone company, he received a violent shock and burn and was thrown to the ground and sustained injuries; that the in-

juries suffered by him were caused by the defendant negligently stringing and hanging its wires between the telephone wires, and negligently maintaining its wires without proper and safe insulations. That if mistaken in either of the specific allegations of negligence, he did not know the specific negligence of defendant which caused his injuries, but that the thing which caused his injury was under the control and management of the defendant, and that if the defendant had exercised ordinary care, the injuries to plaintiff would not have occurred, and that said injuries were directly caused by the negligence of defendant in permitting a dangerous and excessive current of electricity to get into and on the telephone wires being handled at the time by the plaintiff. And, if mistaken in said specific allegations, the plaintiff did not know the specific negligence of the defendant which caused his injury, but that the thing which caused his injury was under the control and management of defendant, and if defendant had exercised ordinary care, the plaintiff would not have been injured, and that the injuries were directly and proximately caused by the negligence of the defendant, the exact nature of which he did not know, and was not able to allege more specifically. That the plaintiff was injured without fault or negligence on his part, and that he did not know of the negligence of the defendant of which he complained. For and on account of which he prayed damages.

The defendant answered by a general demurrer, several special exceptions, a general denial, and specially pleading that if electricity got into any wire or wires at or near Schoppe's store and Matejowsky's store, it was by reason of the negligence of the telephone company in permitting said telephone line or lines to be insecurely fastened and their permitting them to sag and to be out of position; that such was the sole proximate cause of plaintiff's injuries, if any, and damages, if any.

Further pleading in the alternative, defendant alleged that plaintiff knew that said telephone wire or wires at or near the two stores aforesaid were insecurely fastened and the poles supporting same insecurely set, and that said telephone wire or wires were sagging, and that if there was any current in said telephone wires, that plaintiff knew of such condition and was guilty of negligence in not testing said wires before coming in contact with same as he did, if he received his injuries by reason of such contact; that he negligently failed to keep said telephone wire or wires away from defendant's lines, and negligently permitted said telephone wire or wires to sag, and that plaintiff in attempting to repair said telephone wire and fix same securely was on the telephone company's pole and that he reached for his hat which blew off and projected his hand upward in such proximity to the power lines of the defendant, or in pulling up said telephone line permitted the wire to come in such close proximity to the defendant's power line and thereby caused induction into his arm and through his body which was, by reason of the carelessness and negligence of the plaintiff, the sole proximate cause of his injuries, if any; and pleading further in the alternative, if mistaken as to said allegation being the sole proximate cause, then that such acts proximately contributed to cause plaintiff's injuries, if any, and damages, if any, all of which was pleaded in bar of said suit.

The cause was submitted to the jury on special issues and in answer thereto they found:

First, that plaintiff, while working with the telephone wires, received such shock and burn from electricity as to cause him to fall and sustain injury.

Second, that at the time the plaintiff sustained his injuries, the defendant permitted its electric current to get into and on the telephone wire, or wires, around which plaintiff was working.

Third, that in so permitting its electric current to get into and on said telephone wire, or wires, the defendant was guilty of negligence.

Fourth, that said negligence of defendant was a proximate cause of plaintiff's injuries.

Fifth, that the telephone company, in permitting its line or lines to sag, was not guilty of negligence.

Sixth, that the plaintiff, in attempting to repair the telephone wire, did not reach for his hat, and did not project his hands upward in such proximity to the power line as to thereby cause the induction into his arm and through his body of electricity from said wires.

Seventh, that the plaintiff's damages should be assessed at the sum of $9,000.

■ By its proposition No. 1 appellant complains of the charge defining "proximate cause." It insists that the court failed to explain and define the words "effective

cause" which were used in the definition of "proximate cause."

The court defined "proximate cause" to mean "an efficient or effective cause without which the injury would not have happened, and from which danger of injury might reasonably have been anticipated as a natural and probable consequence."

We overrule appellant's complaint and, for reasons for so doing, adopt as our own the reply made thereto by appellee, as follows:

"Several authorities are quoted from by appellant, two of which hold that the term, 'efficient cause,' should be defined, when used in this definition, and that failure to define and explain it is error. There are cases by the Beaumont Court of Civil Appeals and by the San Antonio Court of Civil Appeals. Reliance by appellant and by these courts for this holding is placed in the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, which is an opinion by the Commission of Appeals, and which was approved by the Supreme Court.

"In this case the commission did not hold that the term 'efficient cause' is one of those legal terms that require definition and explanation; nor has any statement of that kind come from the Commission of Appeals or from the Supreme Court. The commission's opinion, written by Judge Speer, simply held that while ordinary words did not require definition, those terms 'which in law have a distinct fixed meaning' should, under the statute, be defined.

"Under this view it should not be necessary to define or explain the term 'efficient cause.' The word 'cause' is undoubtedly a simple word and well understood by the juries. The same may be said of the word 'efficient.' They are ordinary words and have no different meaning in law than in common everyday talk and in common everyday writing. Therefore, it is not surprising that we find other Courts of Civil Appeals ruling differently from the Beaumont and the San Antonio courts. Witness the case of Ramsey v. Gibson, 185 S. W. 1025, wherein Chief Justice Willson, for the Texarkana court, held that the lower court did not err in refusing to instruct the jury as to the meaning of the term 'efficient and procuring cause.' It will be noted, of course, in the definition complained of in this case that the trial court used in his definition of 'proximate cause' the term 'efficient or effective cause.'

"Witness also an opinion by the Amarillo court, written by Justice Hall, wherein he held that the words 'efficient and procuring cause' are not technical, and do not constitute such a term as a trial court is required to define when used in the charge. [See Lumsden v. Jones (Tex. Civ. App.) 227 S. W. 358.] To the same effect is the decision of the Amarillo court, by Chief Justice Hall, in the case of Panhandle & S. F. R. Co. v. Reynolds, 33 S.W.(2d) 249.

"In the case of Southland-Greyhound Lines v. Cotten (Tex. Civ. App.) 55 S.W.(2d) 1066, the trial court defined 'efficient cause' as meaning 'simply the working cause, or that cause which produced effects or results.' The Beaumont Court of Civil Appeals, which gave one of the opinions relied on by appellant, approved this definition, which indicates that the Beaumont court would not hold that the term 'efficient or effective cause' should be defined and explained.

"As stated in the beginning of this discussion, up to and through the decisions relied on by appellant, the Supreme Court of Texas had not given expression to its view upon the necessity of a definition and explanation of the term 'efficient cause.' But more recently such expression has come from the Supreme Court. In a very able opinion, written by Judge Funderburk of the Eastland court, in the case of Texas & P. Ry. Co. v. Short, 62 S.W.(2d) 995, it is held that the term 'efficient cause' is not such legal term as is, under the statute, required to be defined and explained.

"The court in that case gave a charge defining 'proximate cause' in very much the same language as the case here being presented. In said charge the term 'efficient and producing cause' was used instead of the term used in this case—'efficient or effective cause.' The Eastland court wrote: 'We think the "legal terms" required to be explained and defined are only such terms as have in law and judicial proceedings a meaning different from their ordinary meaning and import. (Citing a great many cases.) * * * It would hardly be contended, we think, that the court should define or explain the term "cause." Its meaning in law and judicial proceeding is the same as its usual and ordinary meaning. The same is true, we think, of the word "efficient." Nor does the combination "efficient cause," or "producing cause" change such fact. * * * If a cause is not producing (of an effect), then it is not a cause. * * *'

"The Supreme Court of Texas refused the application for writ of error in this case, and thereby approved the direct holding of the

Court of Civil Appeals that the term 'efficient cause' is not a legal term as requires definition and explanation, when used in a charge defining 'proximate cause.' "

By appellant's propositions Nos. 2 and 3, it is contended that the court erred in its definition of "proximate cause," in that such definition did not take into consideration the intervening of a new and independent cause.

As, in our opinion, appellee's reply to appellant's contention last stated so ably and completely answers such contention, we substantially copy such reply and adopt the same as our own:

It is never necessary to include within the definition of "proximate cause" the further explanation concerning a new and independent cause intervening, when there is no evidence that any new and independent cause intervened between the original cause and the injury.

Our decisions recognize that a new and independent cause, disconnected from the original cause, may intervene to produce an injury and break the chain of sequence and become in itself the direct cause of the injury. This, of course, presupposes an original cause, and presupposes original negligence. Or, as stated in Shippers Compress Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032, 1033: "Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries." As just said, this, of course, presupposes prior negligent acts and a prior cause.

It is known as an "intervening cause." And, as said in approved definitions, "must intervene." It is not itself an original cause. When the defendant in a case undertakes a defense by showing the act was committed in some other way, or that the accident happened from an entirely different cause, it is not understood that the defendant is pleading an "intervening cause," but that the defendant is pleading that the accident did not happen in the way alleged and described by the plaintiff, but happened in some other way and due entirely to some other and different cause.

This is true in this case. The appellant attempts to point to an entirely different way in which this injury was inflicted. The appellant attempts to show that no electricity of the appellant got upon the telephone wires through faulty insulation, or through leaky transformers, from the high-power wire, but that the appellee was caused to be burned and to sustain his injuries by standing on the cross-arm and catching at his hat, and coming in contact with the high-power wire six feet above the top cross-arm. True, the evidence is not sufficiently cogent to get even within the range of a possibility that it might have happened in this way. All of the evidence shows that the appellee was on the bottom cross-arm, and that this bottom cross-arm was 4 feet below the top cross-arm and at least 9 feet below the high-power wire. There is no evidence from any source that appellee was sitting on any other cross-arm. All of the eyewitnesses place him on this cross-arm. He places himself there. And it is the wildest kind of speculation and conjecture to lay hold of a theory that the appellee received his shock and burn in such fashion. But the theory, such it would be if there had been proof of such theory, would not have been an intervening cause of appellee's injury. If there had been proof of such, it would have been a cause within itself, and there would have been no other cause. If this had been the way the injury was inflicted, there would have been no connection to break, because there would not have been any way in which any "original cause" could have had a part.

The same may be said about the other theory advanced by appellant, to the effect that appellee was injured, or might have been injured, by the wire he was pulling "curling up" and striking the high-power wire 9 feet above the wire he was pulling. The testimony in the case is that the appellee was pulling wires which were running to the south, and that he was pulling them and tying them around some part of the cross-arm. There is no testimony that he was actually pulling a wire at the time he received the burn and shock. The testimony is all to the contrary; that he had pulled one of the wires and tied it around a part of the cross-arm. The appellee and the other eyewitnesses stated that at the time he received his injury he was reaching around, or turning around, to get something. The testimony about the wire "curling up" simply came from a witness who was speculating and conjecturing about the possibility that might come from attempting to pull the sag of the telephone wire when above some 8 feet or 10 feet was a high-power wire.

But if the appellant had proof that the appellee sustained his injury as a result of his effort to tighten the wire, causing the wire to curl up and strike a high-power wire 8 or 10 feet above, it would not be introducing an intervening cause, but would be introducing an entirely different cause, which would mean that the cause alleged and

proved by the appellee did not exist. Proof by the appellant that the appellee, in straightening a sagging wire, had caused it to curl up 8 or 10 feet and strike a high-power wire, would be a denial of the cause as alleged and proved by appellee, and a claim that there was no such cause, but that the injuries were inflicted by an entirely different and only cause.

On the complaint that the definition of proximate cause did not take into consideration a new and independent cause, we again refer to Texas & P. R. Co. v. Short (Tex. Civ. App.) 62 S.W.(2d) 995. This opinion and the language has been approved by the Supreme Court. Reference also is made to the language of Judge Gaines in the case of Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 164: "But we are not prepared to hold that in no case can the original cause of the injury be deemed the proximate cause, where an independent and disconnected agency has supervened and brought about the result. The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable. In Seale v. Ry. Co., 65 Tex. 274 [57 Am. Rep. 602], Chief Justice Willie says: 'If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken.'"

In this case, there is no evidence of any new agency. These references are made in view of the approval of the Supreme Court of Texas & P. R. Co. v. Short (Tex. Civ. App.) 62 S.W.(2d) 995.

The proposition, as stated in the language of the second and third propositions, is that a new and independent cause intervened "which broke the connection between the injuries and the original cause." This means, of course, that the existence of the original cause is admitted, but that the insistence is made that a new cause arose which broke the connection between the original negligence, as claimed by the appellee, and the injuries. Therefore, if the matters conjectured by the appellant had any real basis of fact, it would not have been a new and independent cause intervening and breaking the connection, but would be an original cause in itself, with no connection to break.

With reference to the attempted proof that the appellee got close enough to receive his shock and burn from the high-powered wire, by reaching for his hat, attention is called to the fact that the trial court submitted this issue to the jury, and that the jury found against the appellant.

With reference to the attempted proof by way of the suggestions and speculations of a witness that if the appellee had been pulling on the wire at the time it would have had a tendency to curl up toward the high-powered wire, we call attention to the following statement in Seale v. Railway Co., 65 Tex. 278, 57 Am. Rep. 602:

"If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken."

Conceding that the appellant had proved what its witness had testified could be imagined, or could be a possibility, it is easily seen that this situation should have been foreseen by appellant, when its high-powered wire was installed through this little town. It is the evidence that the telephone wires were in Lyons eight years before this high-powered wire was strung. It should be held, of course, that in regulating the height of the high-powered wire, the appellant knew of the possibilities of the same being reached by the telephone wires when the telephone employees were tightening or pulling the sag out of the telephone wires. Therefore, the authority just quoted is a bar to consideration of such intervening cause, if it had in fact been proved instead of imagined or conjectured.

Neither could it be said that the testimony of appellant's witness, to the effect that no work was done on the lines at Lyons, and that the system remained in the same condition for several days, and that one of the employees satisfied himself that there was no connection between the light company wires and the telephone company wires, would be introducing any new or independent cause. There is no testimony that a thorough investigation was made, and that all of the insulation on the wire was inspected and found to be new and in good condition, but simply that no change had been made in the wires, and that the employee satisfied himself there was no connection between the wires.

■ Appellant's complaint of the failure of the court to submit the issue of unavoidable accident is without merit. There was no evidence presenting a theory under which the

accident might have happened from causes different from negligent acts of one or more of the parties. An unavoidable accident is one which is not occasioned in any degree, either directly or remotely, by want of such care or prudence as the law holds every person bound to exercise. So, if the accident complained of could have been prevented by either party by the use of means suggested by reasonable prudence, it was not unavoidable. Dallas Ry. Co. v. Darden (Tex. Com. App.) 38 S.W.(2d) 777, 779.

Special issue No. 2 submitted by the court is as follows:

"Do you find from a preponderance of the evidence that at the time the plaintiff sustained his injuries, the defendant permitted its electric current to get into and on the telephone wire, or wires, around which plaintiff was working?"

Appellant contends that the submission of such issue was error, in that it intermingled more than one ultimate issue as to whether the current got into the line from lack of insulation, or from proximity to the telephone line.

Under the allegations of the plaintiff, and under the facts shown, it was not necessary for the plaintiff to allege specifically whether the electricity escaped into the telephone wire by reason of faulty insulation, or by reason of proximity, or any other specific reason. Texas Power & Light Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702, in which writ of error was refused by our Supreme Court.

Appellant requested the court to instruct a verdict for it. Such request was refused, and appellant assigns such refusal as reversible error.

Appellant reasons that there was no showing by any probative evidence that any alleged act of negligence on the part of appellant had in any way anything to do with the current getting into the telephone wires, or showing that appellant was guilty of any alleged act of negligence which caused the current to get into the telephone wires.

We overrule appellant's contention. It cannot be properly held as a matter of law that appellant could not reasonably anticipate that the telephone wire strung below its electric wire might from one cause or another come in contact with its electric wire and become charged with a current of electricity, if it happened to rest on that portion of its wire not covered with insulation.

When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur, if the one having such control uses proper care, it affords reasonable evidence, in the absence of explanation, that the injury arose from the defendant's want of care.

This is a substantial statement of what is held in the case of McCray v. Railway Co., 89 Tex. 168, 34 S. W. 95. And it is a substantial statement of what is held by all of the courts and declared by the text-writers generally.

For the reasons pointed out the judgment is affirmed.

Affirmed.